**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERILYN A. LUCAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NICHOLAS H. ROMITO, et al., <br><br> Defendants. | Civil Action No. 12-1143 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court on two Cross-Motions for Partial Summary Judgment. The first Motion for Partial Summary Judgment was filed by Plaintiffs Jerilyn A. Lucas ("Lucas") and John Lucas (collectively, "Plaintiffs"). (ECF No. 135.) Defendant American Family Mutual Insurance Company[1] ("Defendant" or "American Family") filed opposition (ECF No. 141), and Plaintiffs replied (ECF No. 142). The second Motion for Partial Summary Judgment was filed by Defendant ("Defendant's Cross-Motion"). (ECF No. 137.) Plaintiffs filed opposition (ECF No. 140), and Defendant replied (ECF No. 143). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Defendant's Cross-Motion for Partial Summary Judgment is GRANTED.

---

[1] Improperly pled as American Family Insurance. (May 31, 2016 Mem. Op. 1 n.2, ECF No. 99.)

I.  **Background**[2]

   A.  **Undisputed Facts**

      1.  The March 8, 2010 Accident[3]

This action arises from an accident that occurred on the New Jersey Turnpike and involved three vehicles (the "Accident"). (Pls.' Statement of Undisputed Material Facts ("SUMF") ¶¶ 1, 2, 3, ECF No. 135-2.) Lucas alleges that an unidentified driver operating a red sports car ("Sports Car") swerved into Defendant Nicholas H. Romito's ("Romito") lane.[4] (Pls.' SUMF ¶¶ 1, 2; May 31, 2016 Mem. Op. 2, ECF No. 99.) Subsequently, Romito's vehicle collided with a truck driven by Mark Fisher[5] ("Fisher"), and owned by Blue Chip Courier,[6] causing Romito's vehicle to veer into the concrete divider. (Def.'s SUMF ¶ 11, ECF No. 137-2.) As the right front seat passenger of Romito's vehicle, Lucas claims she sustained injuries. (Def.'s SUMF ¶¶ 10, 16.)

      2.  Insurance Policies in Effect During the Accident

Following the Accident, Plaintiffs filed Uninsured Motorist ("UM") claims against their insurer, Defendant, and Romito's insurer, Defendant State Farm Mutual Automobile Insurance

---

[2] The Court assumes familiarity with the facts of this matter and only discusses factual allegations necessary to the instant Motions. (*See* May 31, 2016 Mem. Op. 2-4, ECF No. 99.)

[3] (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 10, ECF No. 137-2.)

[4] Plaintiffs are citizens of the State of Wisconsin and executed the insurance policies as Wisconsin residents. (Def.'s SUMF ¶¶ 1, 21.) At the time of the Accident, Romito was a citizen of Illinois. (*Id.* ¶ 3.)

[5] Fisher resides in the State of Connecticut. (Def.'s SUMF ¶ 7.)

[6] Blue Chip Courier resides in the State of New Jersey. (Def.'s SUMF ¶ 8.)

Company[7] ("State Farm"). (May 31, 2016 Mem. Op. 1.) Initially, the sole claim against Defendant[8] was for UM coverage for the Sports Car's alleged liability. (Def.'s SUMF ¶ 17.) At the time of the Accident, on March 8, 2010, Plaintiffs owned three vehicles (the "three vehicles") that were insured by Defendant. (*Id.* ¶ 18.) The three vehicles and their effective coverage dates were as follows: (1) the Chevrolet Impala (the "Chevrolet Policy"), August 11, 2009; (2) the Saturn SL2 (the "Saturn Policy"), September 9, 2009; and (3) the GMC Acadia (the "GMC Policy"), November 14, 2009. (*Id.* ¶ 19.) The three insurance policies were issued with effective periods from August 11, 2009 to May 14, 2010 and included Underinsured Motorist ("UIM") coverage with policy limits set at $150,000 per person and $300,000 per accident, respectively. (Pls.' SUMF ¶ 13; Def.'s SUMF ¶ 20; Def.'s Summ. J. Mot., Ex., ECF No. 137-7.)

All three insurance policies provided by American Family to Plaintiffs contain the definition of UIM coverage as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of the liability of this underinsured motorist coverage." (Def.'s SUMF ¶ 22.) All three insurance policies provided by American Family to Plaintiffs contain anti-stacking clauses with the following language: (1) "if there are two or more cars insured, the total limit of [American Family's] liability under all policies issued to [the insured] by [Defendant] shall not exceed the highest limit of liability under any one policy," and (2) the "limits of liability of this [UIM coverage] may not be added to the limits of liability of any similar coverage under any other policy an insured person or

---

[7] Improperly pled as State Farm Insurance. (May 31, 2016 Mem. Op. 1 n.3.) At the time of the Accident, Romito had an effective insurance policy with State Farm. (Def.'s SUMF ¶ 4.) State Farm is domiciled in Illinois and underwrites automobile insurance policies in New Jersey. (*Id.* ¶ 5.)

[8] American Family is domiciled in the State of Wisconsin and the vehicles it insured were kept in Wisconsin. (Def.'s SUMF ¶¶ 2, 21.)

3

any member of an insured persons household may have." (*Id.* ¶ 23.) Although the GMC policy contains an anti-stacking provision, it also contains an endorsement titled the "Wisconsin Changes," conforming the policies to the then current "Wisconsin law of 2009," which allows for stacking "up to three vehicle policy limits." (*Id.* ¶ 24.)

Plaintiffs notified and "executed an additional personal excess liability policy" insurer, Intervenor Defendant Electric Insurance Company ("EIC"), "which provided [P]laintiffs excess UIM [] coverage of $1,000,000." (Def.'s SUMF ¶ 25; Certification of Harry D. Norton, Jr., Ex. A ("Notice to Umbrella Carrier"), ECF No. 31-1.) On March 11, 2016, Lucas and Fisher executed a Release and Stipulation of Dismissal and notified all parties of the settlement. (Pls.' SUMF ¶ 10.) Additionally, State Farm provided coverage for its insured, Romito, and Lucas because she was an occupant in Romito's vehicle at the time of the Accident. (Def.'s SUMF ¶ 26.) The State Farm insurance policy provided for "UM or UIM coverage policy limits in the amount of $250,000 per person, and $500,000 per accident." (Def.'s SUMF ¶ 27.)

### 3. Subsequent Procedural History and Court Orders

On October 23, 2015, Defendant filed a summary judgment motion. (Def.'s SUMF ¶ 28.) On November 13, 2015, Plaintiffs filed a second motion to bifurcate the case. (ECF No. 81.) The Court's May 31, 2016 Memorandum Opinion: (1) granted Defendant's third-party motion for summary judgment, finding that Plaintiffs' UM claims against American Family and EIC were governed by Wisconsin law; (2) denied State Farm's motion for summary judgment, determining that New Jersey law applied to claims against State Farm; (3) denied Plaintiffs' motion to bifurcate, finding that circumstances had not changed since Plaintiffs' last request to bifurcate; and (4) denied

Blue Chip Courier's motion to stay, finding that it was not represented by the attorneys representing the insurance companies subject to UM coverage.[9] (May 31, 2016 Mem. Op. 10-13.)

On August 25, 2016, Plaintiffs moved to amend their Complaint (ECF No. 111), and on September 6, 2016, Defendant filed opposition to Plaintiffs' motion (Def.'s SUMF ¶ 29). The Court granted Plaintiffs' request to file an Amended Complaint to include an additional UIM cause of action against American Family. (*Id.*) On September 8, 2016, Lucas settled with State Farm for Romito's policy limit of $500,000 after American Family was notified and consented to the payment. (Pls.' SUMF ¶ 11; Def.'s SUMF ¶ 32.) On September 9, 2016, State Farm filed a stipulation of dismissal with prejudice settling all claims regarding Plaintiffs' lawsuit. (Def.'s SUMF ¶ 32.) As a result of the settlement with State Farm, Plaintiffs received "$250,000 for bodily injury claims and $250,000 for UM claims" to settle their claims against State Farm. (*Id.* ¶ 32.)

On December 2, 2016, Plaintiffs filed an Amended Complaint. (Am. Compl., ECF No. 123.) The Amended Complaint added Count Seven, which alleges that Defendant is liable for UIM coverage and payment of Plaintiffs' underinsured damages. (*Id.* at 11-13.) On December 12, 2016, American Family filed its answer to the Amended Complaint. (Def.'s SUMF ¶ 31.) On March 6, 2017, Plaintiffs moved for partial summary judgment on the grounds that the issue involved—contractual interpretation—is a matter of law. (Pls.' Mot. Summ. J. 1, 4.) On March 10, 2017, Defendant also moved for partial summary judgment on the grounds that there is no dispute as to

---

[9] Defendant Robert Chevrolet, Inc. was terminated as a party from this litigation on January 2, 2013. (Consent Order, ECF No. 29.) Blue Chip Courier and Fisher were terminated as parties from this litigation on June 16, 2016. (Stipulation of Dismissal 2, ECF No. 101-2.) State Farm was terminated as a party from this litigation on September 19, 2016. (Stipulation of Dismissal 1, ECF 118.) Electric Insurance Company was terminated as a party from this litigation on October 3, 2016. (Stipulation of Dismissal 2, ECF No. 119.) Romito was terminated as a party from this litigation on December 9, 2016. (Stipulation of Dismissal 2, ECF No. 125.)

material facts pertaining to Plaintiffs' inability to stack insurance policies, or the "applicability of UIM coverage to Plaintiffs' automobile polic[i]es." (Def.'s Cross-Mot. 3, ECF No. 137-3.)

**B.  Disputed Issues**

The parties dispute whether the Chevrolet and Saturn Policies are enforceable under the "Truth in Auto Law" ("Act 28"), 2009 Wis. Act 28 §§ 3148 *et seq.*, or the prior automobile insurance law, 1995 Wisconsin Act 21 ("Act 21"), 1995 Wis. Act 21 §§ 1-6. (Pls.' Reply Br. 2-3, ECF No. 142; Def.'s Reply Br. 1, ECF No. 143.) In addition, the parties dispute Plaintiffs' allegation that Defendant's agent verbally modified the Chevrolet and Saturn Policies. (Pls.' Opp'n Br. 2; Def.'s Reply Br. 1; Pls.' SUMF ¶ 13.) The parties also dispute whether the three policies are "stackable" under Wisconsin law. (Pls.' SUMF ¶ 13.) Finally, the parties dispute the definition of "any" under the exhaustion clause included in each policy. (*Id.*)

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248.

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

6

The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted). "The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002) (citation omitted). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468-69 (internal citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 150 (D.N.J. 2013).

### III. <u>Discussion</u>

The parties disagree on whether the Chevrolet and Saturn Policies are enforceable under Act 21 or Act 28. (Pls.' Reply Br. 2-3; Def.'s Reply Br. 1.) The parties also disagree on whether, under Act 28, the UIM policy limits are aggregated due to the elasticity clause in each policy. (Pls.' Opp'n Br. 12; Def.'s Reply Br. 1.) The parties further disagree on whether the three policies should be viewed as one continuous policy or three separately issued policies. (Pls.' Opp'n Br. 3-6; Def.'s

Reply Br. 1.) Finally, the parties disagree on whether Defendant's agent verbally modified the Chevrolet and Saturn Policies. (Pls.' Opp'n Br. 2; Def.'s Reply Br. 1.) The Court will address each issue in turn.

### A. Chevrolet and Saturn Policies

#### 1. Enforceability Under Act 21 and Act 28

Plaintiffs argue that Lucas is entitled to coverage under Plaintiffs' insurance policies and contend that the three policies are governed by Act 28. (Pls.' Mot. Summ. J. 11.) Defendant denies having UIM coverage responsibilities under the Chevrolet and Saturn Policies issued to Plaintiffs by Defendant, arguing that because "both policies . . . were issued prior to the 'Truth in Auto' law that was enacted on November 1, 2009," Plaintiffs do not qualify for UIM coverage. (Def.'s Opp'n Br. 1, ECF No. 141.)

"Statutory interpretation, which includes interpreting the interaction between two statutes, presents a question of law that [courts] review independently." *Westra v. State Farm Mut. Auto. Ins. Co.*, 835 N.W.2d 280, 283 (Wis. Ct. App. 2013) (citation omitted). In analyzing statutory language, courts generally begin with the language of the statute. *Id.* (citing *State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 681 N.W.2d 110, 124 (Wis. 2004)). When the language of the statute is unambiguous on its face, courts generally stop the inquiry and apply the statute as written. *Id.* (citing *State ex rel. Kalal*, 681 N.W.2d at 124). "If the statutory language is ambiguous—that is, subject to more than one reasonable interpretation—[courts] look to extrinsic sources to ascertain the legislature's intent." *Id.* (citing *State ex rel. Kalal*, 681 N.W.2d at 124).

With respect to the enactment date, Act 21 provides, in relevant part:

> Except as [otherwise] provided . . . the treatment of . . . the statutes first applies to motor vehicle insurance policies that are issued or renewed on the effective date [July 15, 1995] of this subsection. . . . If a motor vehicle insurance policy in existence on the effective date

8

> ... contains a provision authorized under ... this act, the provision is first enforceable with respect to claims arising out of motor vehicle accidents occurring on the effective date[.]

1995 Wis. Stat. § 632.32(5)(1)-(2) (2009-2010). With respect to the enactment date, Act 28 provides, in relevant part:

> The treatment of [the] sections [related to motor vehicle insurance coverage and liability provisions, including § 632.32] of this act take effect on the first day of the 5th month beginning after publication[, November 1, 2009.]

2009 Wis. Act 28 § 9426(2).

The Court finds that Act 28 is unambiguous on its face and, therefore, will enforce the statute as written. *See Westra*, 835 N.W.2d at 283. Here, the Chevrolet and Saturn Policies were issued prior to November 1, 2009. (*See* Def.'s Mot. Summ. J., Exs. I, K, ECF No. 137-13, 137-15.) Specifically, the Chevrolet Policy's issuance date is August 11, 2009 (Def.'s Mot. Summ. J., Ex. I, at 3), and the issuance date for the Saturn Policy is September 26, 2009 (Def.'s Mot. Summ. J., Ex. K, at 5). The Court, therefore, finds that the issuance of both the Chevrolet and Saturn Policies occurred while Act 21 was current law and prior to the enactment date of Act 28. *See* 2009 Wis. Act 28 § 9426(2) (stating that the Act would take effect on November 1, 2009). In other words, the issuance of the Chevrolet and Saturn Policies predate Act 28 and fall within the scope of Act 21. Accordingly, the Court finds based on the issuance dates of the Chevrolet and Saturn Policies that the Policies are governed by Act 21.

2. Application of the Elasticity Clause

Notwithstanding the issuance dates, Plaintiffs argue that "when focusing not on the issuance date but rather the 'in force' date where at least one of the policies was issued after the effective date of [Act 28] that clearly anticipate[s] aggregation of multiple policies owned by the policyholder 'in force' at the time of the [A]ccident." (Pls.' Opp'n Br. 1.) Plaintiffs, therefore,

contend "that sequential agreements between the parties represents (sic) one continuing transaction that belies treating them separately to defeat [Act 28's] policy and intent." (*Id.*) At bottom, Plaintiffs seek to enforce the elasticity clause in their insurance policy and argue that they are owed UIM coverage under the three policies as required under Act 28. (*See id.*)

To determine whether Act 28 applies to the Chevrolet and Saturn Policies, the Court must consider the terms of the applicable policies. A court "interpret[s] insurance policies using the same rules that apply to contracts in general." *Wolf v. Am. Family Mut. Ins. Co.*, 865 N.W.2d 186, 188 (Wis. Ct. App. 2015), *cert. denied*, 862 N.W.2d 901 (Wis. 2015) (citing *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 607 N.W.2d 276, 282 (Wis. 2000)). A court, therefore, "must determine and give effect to the intent of the insurer and the insured." *Id.* (citing *Wis. Label Corp.*, 607 N.W.2d at 282). To that end, courts "construe the policy as a reasonable person in the position of the insured would understand the agreement." *Id.* When a court cannot find any ambiguity in a policy, the court will interpret the terms of the contract as the terms are written. *Id.* (citing *Kremers-Urban Co. v. Am. Emp'rs Ins. Co.*, 351 N.W.2d 156, 163 (1984)).

The elasticity clause in the Chevrolet and Saturn Policies provides: "[t]erms of this policy which are in conflict with the statutes of the state in which this policy is issued are changed to conform to these statutes." (Def.'s Mot. Summ. J., Exs. I, K, ECF Nos. 137-13, 137-15.) The Court finds that the contract language in the elasticity clause is clear and unambiguous. Contrary to Plaintiffs' argument, "the legislature is presumed to act with knowledge of the existing case law." *Foster v. Regent Ins. Co.*, No. 2014AP2592, 2016 WL 3982603, at *7 (Wis. Ct. App. July 26, 2016). At the time Plaintiffs' Chevrolet and Saturn Policies were issued, on August 11, 2009, and September 26, 2009, respectively, Act 21 applied. At the time of the Accident on March 8, 2010, however, the changes in Act 28 were in effect, but did not apply to Plaintiffs' Policies because Act

28 only applied to policies *issued or renewed* after the effective date of November 1, 2009. *See* 2009 Wis. Act 28, § 9426(6) (emphasis added). Moreover, Act 28 differs from Act 21 in several ways.

> First, [Act 28] created a broader definition of underinsured motor vehicles, describing them as vehicles that do not carry enough coverage to fully compensate a party for his or her injuries. 2009 Wis. Act 28, § 3153. Second, [Act 28] prohibited reducing clauses like the one seen in [Plaintiffs'] policy. *Id.*, § 3171. On the other hand, the amended Wisconsin statutes has an effective date of November 1, 2009. *See id.*; [*Id.*], § 9426(2). And, the legislature explicitly said the statutory changes that took effect on November 1, 2009, only applied to policies issued or renewed after the effective date. *Id.*, § 9426(6).

*Wolf*, 865 N.W.2d at 188. The Court finds that amendments included in Act 28 do not apply to policies that were renewed or issued before November 1, 2009. *See* 2009 Wis. Act 28, § 9426(6); *Wolf*, 865 N.W.2d at 188. Accordingly, the Court concludes that there is no conflict requiring the application of the policies' elasticity clause.

3. Verbal Modification of the Policies

Notwithstanding the issuance dates of the policies and the effective date of Act 28, Plaintiffs argue that Lucas "was told by Defendant's agent that her UIM policies were stackable[.]" (Pls.' Opp'n Br. 10, ECF No. 140.) Plaintiffs contend that "Defendant's agent's promise of stacking rights to Plaintiffs' policies may have automatically been based on its understanding that [Act 28] can only be interpreted as referring to two or more policies 'in force' at the time of an accident[.]" (*Id.* at 11.) Plaintiffs, therefore, contend that Defendant's agent's verbal promise serves as a modification or renewal thereby triggering the application of Act 28. (Pls.' Opp'n Br. 10-11; Lucas Aff. ¶ 3, ECF No. 140-2.) In opposition, Defendant contends that Plaintiffs attached an affidavit (the "Lucus Affidavit") that "is self-serving and should be disregarded by the Court as it lacks the affiant's personal knowledge and attempts to make legal conclusions[.]" (Def.'s Reply

Br. 1-2.) Specifically, Defendant contends that "[a]lthough Plaintiffs argue in the Lucas Affidavit that [Defendant's] agent Sherry L. Watson allegedly promised . . . Lucas that the three automobile policies issued to Plaintiffs by American Family were 'stackable'[;] the affidavit offered by Plaintiffs does not comply with" Federal Rule of Civil Procedure 56(c) and New Jersey's Federal Local Civil Procedure 7.2(a). (*Id.* at 6.) Defendant, therefore, argues that the affidavit is inadmissible as a matter of law. (*Id.*)

Under Federal Rule of Civil Procedure 56(c), a district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must draw inferences "from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotation omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Further, Local Civil Rule 7.2(a) states: Affidavits shall be restricted to statements of fact within the personal knowledge of the [affiant]. Argument of the facts and the law shall not be contained in [affidavits]. Legal arguments and summations in affidavits will be disregarded by the Court[.] L.Civ.R. 7.2(a).

"As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcot, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). The Third Circuit has held that "a single, non-conclusory, affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law." *Cappuccio v. Prime Capital Funding*

12

*LLC*, 649 F.3d 180, 189 (3d Cir. 2011), *as amended* (Sept. 29, 2011) (citing *Kirleis*, 560 F.3d at 161-63. "This remains true even if the affidavit is 'self-serving' in the sense of supporting the affiant's own legal claim interests." *Id.* at 190. "Put differently, a self-serving affidavit may defeat summary judgment in the absence of other evidence rendering it incredible." *Marrin v. Cap. Health Sys. Inc.*, No. 14-2558, 2017 WL 2369910, at *17 (D.N.J. May 31, 2017) (quoting *Gonzalez*, 678 F.3d at 264).

Here, the Lucus Affidavit states, in relevant part, that Lucas:

> had telephone conversations on more than one occasion with [her] American Family Agent, Sherry L. Watson, after [her] March 8, 2010, accident during which [Watson] informed [her] that due to the changes in the Wisconsin State law which occurred in 2009, [Plaintiff] would now be allowed to 'stack' [Plaintiffs'] UM/UIM insurance coverage for up to three vehicles.

(Lucus Aff. ¶ 3, ECF No. 140-2.) The Court finds that Lucas's statement that Defendant's agent promised that she "would now be allowed to 'stack' [Plaintiffs'] UM/UIM insurance coverage for up to three vehicles" contains a legal conclusion, as "stackable" is a legal conclusion that requires contractual interpretation. The Court finds Lucas is entitled to use her own affidavit in an attempt to defeat summary judgment, to the extent that her testimony is non-conclusory and based on her personal knowledge; however, Plaintiffs may not use conclusory statements in an attempt to defeat summary judgment. *See Marrin*, 2017 WL 2369910, at *17 ("[A plaintiff's] conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.") (citation omitted). The Court finds the Lucas Affidavit insufficient to create a genuine dispute of material fact that would withstand a motion for summary judgment.

Because Plaintiffs' Chevrolet and Saturn Policies were not issued, renewed, or modified subsequent to the enactment date of Act 28, the Court concludes that the Chevrolet and Saturn

13

Policies are governed by Act 21. Accordingly, the Court finds that Plaintiffs do not qualify for UIM coverage under the Chevrolet and Saturn Policies.[10]

**B. GMC Policy**

With respect to the GMC Policy, the parties do not contest that Defendant issued the GMC Policy after Act 28's effective date. Defendant concedes that the GMC Policy issued to Plaintiffs is governed by Act 28. (Def.'s Opp'n Br. 10.) Accordingly, the Court finds that the GMC Policy is governed by Act 28. Notwithstanding this concession, Defendant argues that "the UIM coverage should be limited to the GMC's policy limits[,]" which as a matter of law limits the UIM coverage available to Plaintiffs to $150,000 per person and $300,000 per accident. (*Id.*) Defendant, therefore, contends that if the Court determines that the GMC Policy is controlled by Act 28 and Plaintiffs are entitled to UIM coverage under the GMC Policy, the Court should limit UIM coverage to the Policy's limits. (*Id.*) Defendant, however, has not "formally denied UIM coverage to Plaintiffs." (*Id.* at 1.) Accordingly, the Court declines to reach the issue of UIM coverage limits under the GMC Policy.

**C. Stacking of the Three Policies**

1. <u>Chevrolet and Saturn Policies</u>

Finding that the Chevrolet and Saturn Policies are governed by Act 21, the Court now turns to whether Plaintiffs are permitted to "stack" their Chevrolet and Saturn Policies. Plaintiff does not address the implications of the Chevrolet and Saturn Policies' anti-stacking provisions in the

---

[10] The parties also disagree on whether the three policies should be viewed as one continuous policy or three separately issued policies. (Pls.' Reply Br. 3-6; Def.'s Reply Br. 1.) The Court is unaware of and Plaintiffs fail to cite to any authority that supports the proposition that an insurance automobile policy governed by Act 21 but "in force" following the enactment of Act 28 allows an insured to aggregate rights for multiple policies issued before and after the enactment of Act 28. (*See* Pls.' Reply Br. 5.) The Court, therefore, declines Plaintiffs' invitation to address this issue as the Court finds that as a matter of law the Chevrolet and Saturn Policies are governed by Act 21.

14

context of Act 21. Defendant, however, argues that "Act 21 specifically permitted automobile insurance policies in [Wisconsin] to have contractual provisions that ban insureds from 'stacking' their insurance policies and collecting from more than one policy by the same insurer for the same accident." (Def.'s Opp'n Br. 7 (citing 1995 Wis. Act 21 § 4, 632.32(5)(f)).)

Act 21, in relevant part, states:

> A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid, the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

1995 Wis. Act 21 § 4, 632.32(5)(f).

The Chevrolet and Saturn Policies contain provisions that limit stacking. (*See* Def.'s Opp'n Br., Ex. 4, Chevrolet Policy, General Provisions ¶ 3; Def.'s Opp'n Br., Ex. 6, Saturn Policy, General Provisions ¶ 6.) The Chevrolet and Saturn Policies state that when two or more cars are insured, the anti-stacking provisions apply. (*See Id.*; Def.'s Opp'n Br., Ex. 6, Saturn Policy, General Provisions ¶ 6.) Specifically, both Policies issued by American Family to Plaintiffs contain anti-stacking clauses, which provide: (1) "if there are two or more vehicles insured, the total limit of [American Family's] liability under all policies issued to [the insured] by [American Family] shall not exceed the highest limit of liability under any one policy," and (2) the liability of this UIM coverage "may not be added to the limits of liability of any similar coverage under any other policy an insured person or any member of an insured persons household may have." (Def.'s SUMF ¶ 23; Def.'s Opp'n Br., Ex. 4, Chevrolet Policy, UIM Coverage ¶ 2; Def.'s Opp'n Br., Ex. 6, Saturn Policy, UIM Coverage ¶ 2.) Here, Plaintiffs' Chevrolet and Saturn vehicles were insured

with Defendant. The Court, therefore, finds that the Chevrolet and Saturn Policies include an "anti-stacking" provision as permitted under Act 21.

2. GMC Policy

With respect to the GMC Policy, the parties do not contest and the Court has already determined that the GMC Policy is governed by Act 28. In relevant part, Act 28 states that: "[n]o policy may provide that, regardless of the number of [policies or vehicles] involved . . . the limits for any uninsured motorist coverage or underinsured motorist coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available[.]" Assemb. B. 75, 99th Legis. Sess., Reg. Sess., § 3168 (Wis. 2009). Here, the GMC Policy contains an anti-stacking provision, but also contains an endorsement titled the "Wisconsin Changes." (*See* Def.'s SUMF ¶ 24.) As such, unlike the Chevrolet and Saturn Policies, the GMC Policy allows for stacking "up to three vehicle policy limits." (Def.'s SUMF ¶ 24.) Accordingly, the Court finds that the GMC Policy permits stacking.

D. **UIM Coverage in the Policies**

Finding that the Chevrolet and Saturn Policies are governed by Act 21, the Court now turns to whether Plaintiffs' UIM claim is precluded from UIM coverage under the Chevrolet and Saturn's Policies.[11] Plaintiffs argue that the UIM clauses in the Chevrolet and Saturn Policies should be interpreted so as "to produce a reasonable result," and not to require an impossible obligation or a "Draconian result." (Pls.' Mot. Summ. J. 11.) Defendant argues that Plaintiffs are not entitled to UIM coverage under the Chevrolet and Saturn Policies. (Def.'s Cross-Mot. 7.)

---

[11] The Court notes that both parties concede that if the Court deems New Jersey law to apply to Plaintiffs' UIM causes of action, New Jersey does not permit the "stacking" of automobile insurance policies. (Def.'s Opp'n Br. 9 n.3.; Pls.' Opp'n Br. 16). Accordingly, the Court agrees with the parties that under New Jersey law, Plaintiffs are prohibited from "stacking" UIM insurance policy coverage. *See* N.J.S.A. 17:28-1.1(c).

Specifically, Defendant contends that because Plaintiffs accessed Romito's liability coverage versus the UIM coverage under the Chevrolet and Saturn Policies, Plaintiffs do not qualify for UIM coverage. (*Id.* at 8-9.)

An insurer's ability to determine how UIM coverage is contractually defined is not limited by Act 21. 1995 Wis. Act 21. The Chevrolet and Saturn Policies define an underinsured motor vehicle as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this underinsured motorist coverage." (Def.'s SUMF ¶ 22; Def.'s Opp'n Br., Ex. 4, Chevrolet Policy, UIM Coverage ¶ 3; Def.'s Opp'n Br., Ex. 6, Saturn Policy, UIM Coverage ¶ 3.)

Here, State Farm provided coverage for its insured, Romito, and also provided coverage for Lucas because she was an occupant in Romito's vehicle at the time of the Accident. (Def.'s SUMF ¶ 26.) The State Farm policy for the Accident provided for "UIM coverage policy limits in the amount of $250,000 per person, and $500,000 per accident." (Def.'s SUMF ¶ 27.) The Chevrolet and Saturn Policies have UIM coverage limits of $150,000 per person, and $300,000 per accident, respectively. (Def.'s SUMF ¶ 20.) Plaintiffs' Chevrolet and Saturn Policies' limits are less than the coverage limits afforded to them through the State Farm policy. The Court, therefore, finds that Plaintiffs are not entitled to assert a UIM claim under the Chevrolet and Saturn Policies. Accordingly, the Court concludes that Plaintiffs are barred from asserting a UIM claim under the Chevrolet and Saturn Policies against Defendant as a matter of law.[12]

---

[12] The parties disagree on whether an exhaustion clause limits the UIM coverage available to Plaintiffs because they allegedly did not exhaust their ability to collect the liability limits from Fisher's policy. (Pls.' Mot. Summ. J. 15; Def.'s Opp'n Br. 3-5.) This argument, however, is premised on Act 28 applying to the Chevrolet and Saturn Policies. Because the Court finds that the Chevrolet and Saturn Policies are governed by Act 21 and the Policies include an anti-stacking provision, the Court also concludes that Plaintiffs do not qualify for UIM coverage under these policies.

17

## IV. Conclusion

For the reasons set forth above, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment and GRANTS Defendant's Cross-Motion for Partial Summary Judgment. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 18, 2017